# United States Court of Appeals

## For the First Circuit

No. 02-1956

CATHERINE F. LISTON,

Plaintiff, Appellant,

v.

UNUM CORPORATION OFFICER SEVERANCE PLAN, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Boudin, Chief Judge,

Torruella and Lynch, Circuit Judges.

Lawrence C. Winger for appellant.
Byrne J. Decker with whom Pierce Atwood was on brief for appellees.

May 27, 2003

**BOUDIN**, **Chief Judge**.  Appellant Catherine Liston is a former officer of UnumProvident Corporation ("UP"), an insurance company incorporated in Delaware.  Prior to its June 1999 merger with Provident Companies, Inc., the UNUM Corporation had adopted an officer severance plan ("the plan") to provide benefits for officers whose jobs were "eliminated" as a result of a "change in control" of the company.  The benefits could amount to as much as 36 weeks' salary, and an officer could obtain them if any of the plan's triggering conditions were satisfied, importantly: a "significant adverse reduction or alteration in the nature and status (other than title) of the officer's position, duties or responsibilities . . . within 365 days of the change in control."

After the merger, Liston, who was one of several vice-presidents at UP,[1] found that her obligations had increased and that her authority had diminished.  She claimed that she had to work an additional 20 hours per week and travel three times more often.  In addition, she said that she had less authority to make strategic and administrative decisions (e.g., salary decisions for subordinates).  Liston viewed these changes as a "significant adverse reduction or alteration in the nature and status" of her employment under the plan's change-in-control provision.  In March

---

[1]Her title changed from Vice-President of Long Term Disability Benefits to Vice-President, Portland Customer Care as a result of the merger, but a number of the job functions performed by Liston remained the same.

2000, she resigned from her position at UP and requested benefits pursuant to the change-in-control clause.

In April 2000, a plan official rejected her request stating that her claims, even if true, did "not constitute a significant adverse alteration in the nature and status of your position." On further review, two different plan committees reached the same result. At the final stage, Liston identified five other officers whom she said had received benefits after their jobs were altered; she had made less specific allegations to this effect at earlier points. But the review committee at this last stage said that the benefits given to the other five employees were irrelevant to Liston because those employees were not similarly situated to her.

In March 2001, Liston filed a complaint against the plan, the administrator, and UP in the federal district court in Maine to obtain benefits under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, [or] to enforce his rights under the terms of the plan . . ."). Liston claimed that the defendants had acted arbitrarily and capriciously in denying her benefits even though they had awarded them to others, and she sought discovery of documents pertaining to fourteen persons who had received benefits (including the five earlier identified). Liston also challenged as

arbitrary and capricious the administrator's rules construing the plan's change-in-control provision.

The magistrate judge denied this discovery request, finding that "a review of the merits of this particular denial . . . is not dependent upon what happened to other officers' claims." The judge noted the "hopelessness of [the] task" of comparing the claims given that the court would "be called upon to make fourteen or more separate determinations about an 'adverse reduction or alteration' in job duties." The judge did allow discovery "[t]o the extent the decisionmakers considered claims by other officers who [made claims under the change-in-control provisions] when considering plaintiff's claims."

The discovery order was affirmed by the district court and Liston then deposed the plan administrator as to the information considered by the final review committee in rejecting Liston's claim. That deposition revealed that the claims of the other five officers cited by Liston were briefly mentioned at the meeting (Liston having identified them), but that there was no extended discussion of the relative merits of their claims nor any reference to materials relating to their benefits determinations.

On July 17, 2002, the court granted summary judgment for the defendants, Liston v. Unum Corp. Officer Severance Plan, 211 F. Supp. 2d 222 (D. Me. 2002), finding that the plan administrator had not acted arbitrarily or capriciously in interpreting and applying

the plan. Liston has now appealed to this court challenging the rejection of her discovery requests, the administrator's interpretive rules, and the denial of benefits to her. Because the plan reserves discretion to the administrator, judicial review of the denial is limited to determining whether the administrator acted arbitrarily and capriciously. Leahy v. Raytheon Co., 315 F.3d 11, 15 (1st Cir. 2002). Cf. Doe v. Travelers Ins. Co., 167 F.3d 53, 56-57 (1st Cir. 1999).

We begin with Liston's substantive attacks on the denial of benefits and then turn to her discovery request. On July 6, 1999, shortly after the merger of the UNUM Corporation and Provident Companies, Inc., the plan administrator adopted a set of rules defining certain plan terms. Recall that the plan protected the covered officers against a change of control that resulted in job elimination and that "a significant adverse reduction or alteration" in the job--even without its actual elimination--was one of the triggers for benefits. We reproduce both the pertinent plan and rule language as an appendix to this opinion.

The rules specified, inter alia, that a "significant adverse reduction or alteration" meant (1) the loss of a position without an opportunity to work elsewhere at the merged entity, (2) a demotion from a "director or manager of a major unit" to a contributor to that unit, or (3) a "reduction of more than 10% of the base salary received by the officer prior to the change in

-5-

control."  Further a job was not deemed "eliminated" if the
employee was offered, within 50 miles of his original location, a
"comparable position," namely, one

> within the same functional area, which
> requires similar skills and abilities the
> officer utilizes in his or her current
> position and does not result in a reduction of
> more than 10% of the base salary he or she was
> receiving immediately prior to the change in
> control . . . .

One might expect Liston to argue that clause (2) is too
narrow a reading of the plan's language in a case where there is a
substantial reduction in responsibility but no pay cut or complete
loss of supervisory authority.  Instead, Liston first argues that
the rules are at odds with the plan because they deny benefits
unless the employee's job is curtailed <u>and</u> no comparable job is
available elsewhere in the company.  She points out that the plan
language defines "job elimination" to include a "significant
adverse reduction or alteration in the nature and status (other
than title) of the officer's position, duties or responsibilities"
<u>or</u> "[t]he lack of any re-employment opportunity that would utilize
the officer's professional skills and abilities."  Thus, she says
that the rules are an unlawful amendment of the plan rather than a
permissible interpretation.[2]

---

[2]In general, the plan provides that it could be amended at any
time.  However, for obvious reasons, it also forbad any amendment
of the change-of-control provisions within 12 months of a change of
control.  The rules in question were issued within 12 months of the
merger.

Liston's position, although perhaps a literal reading of the plan, is absurd and therefore untenable. Rodriguez-Abreu v. Chase Manhattan Bank, 986 F.2d 580, 586 (1st Cir. 1993). On her interpretation, an employee whose job was kept completely intact would get benefits because no comparable position was offered; and one whose job was eliminated would get benefits even though an essentially similar job was created for the employee. Even if review of the administrator's interpretation were de novo--it is in fact deferential, see Terry v. Bayer Corp., 145 F.3d 28, 40 (1st Cir. 1998)--we would reject Liston's reading because it makes no sense.

In the alternative, Liston argues that summary judgment against her was mistaken because there were still material facts in dispute. She says that such disputes exist with respect to whether her old job at UP was eliminated, the manner and extent to which her post-merger job differed from her pre-merger job, and whether the employees who received benefits under the plan were similarly situated to her. This challenge to summary judgment conceals a preliminary issue, namely, whether evidence beyond the administrative record can be considered at all.

The ordinary rule is that review for arbitrariness is on the record made before the entity being reviewed. Leahy, 315 F.3d at 17-18. True, we have declined in cases like this one to adopt an ironclad rule against new evidence. Doe, 167 F.3d at 57-58.

For example, discovery may be needed because the decisional process is too informal to provide a record. <u>See generally</u> <u>Citizens to Preserve Overton Park, Inc.</u> v. <u>Volpe</u>, 401 U.S. 402, 415-16 (1971). And certain kinds of claims--<u>e.g.</u>, proof of corruption--may in their nature or timing take a reviewing court to materials outside the administrative record. <u>Cf.</u> <u>Perlman</u> v. <u>Swiss Bank Corp. Comprehensive Disability Prot. Plan</u>, 195 F.3d 975, 981-82 (7th Cir. 1999).

Still, at least some very good reason is needed to overcome the strong presumption that the record on review is limited to the record before the administrator. This is the view of virtually all of the circuits with the possible exception of the Fifth Circuit.[3] It is almost inherent in the idea of reviewing agency or other administrative action for reasonableness; how could an administrator act unreasonably by ignoring information never presented to it? <u>See</u> <u>Mills</u> v. <u>Apfel</u>, 244 F.3d 1, 4-5 (1st Cir.

---

[3]<u>See, e.g.</u>, <u>Perlman</u>, 195 F.3d at 981-82; <u>Wilkins</u> v. <u>Baptist Healthcare Sys., Inc.</u>, 150 F.3d 609, 616-20 (6th Cir. 1998); <u>DeFelice</u> v. <u>Am. Int'l Life Assurance Co.</u>, 112 F.3d 61, 65 (2d Cir. 1997); <u>Taft</u> v. <u>Equitable Life Assurance Soc'y</u>, 9 F.3d 1469, 1471-72 (9th Cir. 1993); <u>Donatelli</u> v. <u>Home Ins. Co.</u>, 992 F.2d 763, 765 (8th Cir. 1993); <u>Quesinberry</u> v. <u>Life Ins. Co. of N. Am.</u>, 987 F.2d 1017, 1021-27 (4th Cir. 1993) (en banc); <u>Sandoval</u> v. <u>Aetna Life & Cas. Ins. Co.</u>, 967 F.2d 377, 380 (10th Cir. 1992); <u>Luby</u> v. <u>Teamsters Health, Welfare, and Pension Trust Funds</u>, 944 F.2d 1176, 1184-85 (3d Cir. 1991). <u>But see</u> <u>Wildbur</u> v. <u>ARCO Chem. Co.</u>, 974 F.2d 631, 636-42 (5th Cir. 1992). Liston cites two cases--<u>Miller</u> v. <u>United Welfare Fund</u>, 72 F.3d 1066 (2d Cir. 1995), and <u>Milone</u> v. <u>Exclusive Healthcare, Inc.</u>, 244 F.3d 615 (8th Cir. 2001)--but both are at odds with her position. <u>See</u> <u>Miller</u>, 72 F.3d at 1072; <u>Malone</u>, 244 F.3d at 618.

2001), <u>cert. denied</u>, 122 S.Ct. 822 (2002); <u>Taft</u>, 9 F.3d at 1472 ("Permitting a . . . court to examine [such evidence suggests] that [an] administrator abused its discretion by failing to consider evidence not before it.").

Even where <u>de novo</u> review exists under ERISA, it is at least doubtful that courts should be in any hurry to consider evidence or claims not presented to the plan administrator. <u>See, e.g.</u>, <u>Quesinberry</u>, 987 F.2d at 1025; <u>Wilkins</u>, 150 F.3d at 616 (Cole, J., concurring). Exhaustion of remedies principles point in this direction even if <u>no</u> deference were due to the administrator's determination, assuming always that the plan empowered the administrator to make an initial decision. But this is an issue on which the circuits have taken different views. <u>Compare</u> <u>Quesinberry</u>, 987 F.2d at 1025 (only when "clearly . . . necessary" for effective review) <u>with</u> <u>Luby</u>, 944 F.2d at 1184 (not providing any qualifications on when additional evidence may be considered), and we need not resolve the issue here.

Where as here review is under the arbitrariness standard, the ordinary question is whether the administrator's action on the record before him was unreasonable. <u>Cook</u> v. <u>Liberty Life Assurance Co. of Boston</u>, 320 F.3d 11, 19 (1st Cir. 2003); <u>Pari-Fasano</u> v. <u>ITT Hartford Life & Accident Ins. Co.</u>, 230 F.3d 415, 419 (1st Cir. 2000). Liston did not seek a jury trial--and the precedents of this and other circuits suggest that it would likely have been

unavailable[4]--so the issue here is simply whether the judge deems the administrator's denial of benefits irrational. Assuming that the decision is to be made by the judge based solely on the record made at the administrative level, summary judgment is merely a mechanism for tendering the issue and no special inferences are to be drawn in favor of a plaintiff resisting in summary judgment; on the contrary, the rationality standard tends to resolve doubts in favor of the administrator.

Turning then to the merits, Liston's job was not eliminated so the only serious question is whether it was so diminished in its functions and authority as to trigger the "significant adverse reduction" clause. If the administrator's rules were read as making exclusive the three rubrics listed above, then Liston's position would be hopeless: her job was altered rather than eliminated; she still had supervisory authority and was not reduced from a manager to a mere contributor to her unit; and

---

[4]Although a few district courts have suggested that jury trials are available for ERISA benefit claims under 29 U.S.C. § 1132(a)(1)(B), Rhodes v. Piggly Wiggly Ala. Distrib. Co., 741 F. Supp. 1542, 1543-44 (N.D. Ala. 1990), the circuit courts to have considered the question have concluded that juries are not available for such claims. E.g., Sullivan v. LTV Aerospace & Def. Co., 82 F.3d 1251, 1258 (2d. Cir. 1996); Borst v. Chevron Corp., 36 F.3d 1308, 1323-24 (5th Cir. 1994), cert. denied, 514 U.S. 1066 (1995); Cox v. Keystone Carbon Co., 894 F.2d 647, 649-50 (3d Cir.), cert. denied, 498 U.S. 811 (1990). Our own circuit has expressly reserved the question, Recupero v. New England Tel. & Tel. Co., 118 F.3d 820, 831 (1st Cir. 1997), although we have held where the case is decided on the administrative record and no additional evidence is considered, jury trials are not available. Id. at 831-32.

she does not claim that her salary decreased by more than ten percent.

It is open to doubt whether the three rubrics should be read as exclusive conditions or merely as safe harbors for satisfying the adverse reduction clause. Seemingly, cases falling within any one of the rubrics automatically trigger the clause; but, it could well be argued, their listing does not preclude a showing by Liston that in other respects her authority was so severely curtailed as to trigger benefits. If Liston were left with pay and title but confined to supervising one janitor, it would be pretty hard to say that the clause was not triggered--even allowing reasonable latitude to the administrator to construe the plan.

However, there is no showing that the administrator has adopted a rigid and mechanical reading of the plan. While noting that none of the rubrics applied to Liston's situation, the administrative decision in this case ruled more broadly that Liston's new position was "comparable" and required "similar skills and abilities" to her old one. And on the facts that Liston presented to the administrator and to us there is nothing unreasonable about the result reached by the administrator.

About the only specifics supplied by Liston are that her job and travel schedule became more demanding but these are not proof of diminished responsibility. Beyond these changes, Liston

-11-

argued that she was no longer "responsible for developing and implementing growth and service strategies as well as piloting new work processes." Statements at this level of abstraction do not make the administrator's ultimate decision "arbitrary."

This finally brings us to, and readily explains Liston's reliance upon, her remaining argument: that other officers similarly situated got the benefits that Liston seeks and that she was denied an opportunity for discovery to show that this was so. Both the administrator and the court refused to allow discovery into how others were treated. For practical purposes, the question is whether the administrator or the court abused its discretion; in this instance no further refinements of the respective standards of review are necessary.[5]

Whether discovery was warranted depends in part on if and in what respect it matters whether others were better treated than Liston, and this is not a question that has a neat mechanical answer. Liston's suit is for benefits that Liston says were promised to her by the plan, not a discrimination case, so the central issue must always be what the plan promised to Liston and

---

[5]The administrator's obligation to avoid arbitrary and capricious behavior extends to procedure as well as substance, Perlman, 195 F.3d at 381; and limitations on discovery in court proceedings are normally tested under an abuse of discretion standard, though the phrasing is often very favorable to the trial judge. Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 186 (1st Cir. 1989) (review only for a "clear showing of manifest injustice" such that the ruling was "plainly wrong and resulted in substantial prejudice to the aggrieved party").

whether the plan delivered. Nevertheless, how others were treated could--in some cases--be substantively relevant to the question whether the administrator's construction and application of the plan to Liston was reasonable. Mauser v. Raytheon Co. Pension Plan, 239 F.3d 51, 56-57 (1st Cir. 2001).

Imagine, for example, that the plan was unclear as to whether an officer who had served for less than three years could qualify for coverage. Conceivably, proof that other officers who had served only one year were regularly given benefits could represent an administrative construction bearing on the meaning of the plan and undermine the reasonableness of a contrary and disparate reading in a given case. Mauser, 239 F.3d at 56-57. Of course, the issue should be raised in the first instance during the claims process, but here Liston did seek information about benefits for comparably situated employees from the administrator and was rebuffed.

Still, we think in this instance the rebuff was reasonable both at the administrative and court level. Whether the plan applies to those with less than three years' seniority is ordinarily a question with a yes or no answer; and it is easy to determine from records whether prior practice represents an administrative construction. Liston's case is at the opposite pole: we cannot imagine that there is anyone else in the company whose position before, and treatment after, the merger corresponds

in every respect to Liston's.  The plan's general standard is too vague and the variables in executive jobs are too numerous to expect that anyone else will be identically placed.

Thus, as the magistrate judge pointed out, comparison of the files of others who received or were denied benefits invites an open-ended and probably hopeless attempt to compare disparate situations--whether impressionistically or by drawing up formulas purporting to explain the outcomes.[6]  The search through other records would have to be exhaustive; it would be only the predicate to further dispute about the significance of the information; and probably it would not be conclusive.  Every administrative denial would be an occasion for a vast and expensive inquiry into what judges sometimes call "collateral issues."  See, e.g., United States v. Andujar, 49 F.3d 16, 26 (1st Cir. 1995).

Mandating discovery in such a situation would be at odds with the concerns about efficient administration that underlie the ERISA statute itself.  See, e.g, Taft, 9 F.3d at 1472.  True, Liston is handicapped by having to show that the outcome of discovery would be helpful before she can get access to materials that might show just this; but this is the standard situation in

_____

[6]Liston also argues that the district judge may have granted summary judgment against her without realizing the relatively limited amount of information she could discover under the magistrate judge's order.  We have reviewed the language in the district court opinion identified by Liston and see no such confusion, particularly because the district court had already affirmed the magistrate judge's discovery ruling in a prior order.

discovery and the reason why those in charge are expected to exercise judgment.  <u>Fennell</u> v. <u>First Step Designs, Ltd.</u>, 83 F.3d 526, 532 (1st Cir. 1996).   In this instance, this judgment was permissibly exercised.

<u>Affirmed</u>.

Appendix

The following language is taken from the UNUM Corporation Officer Severance Plan and Administrative Rule concerning the change-in-control provision.

**Plan**

In the event of a change in control of UNUM Corporation, officers whose jobs are eliminated within 365 days of the change in control will be eligible for severance benefits so long as they meet the eligibility requirements of the Severance Plan section on Eligibility, and providing they are not eligible for severance benefits under any separate agreement with UNUM Corporation or the UNUM Employer regarding change in control. For the purposes of this subsection only, job elimination shall include termination for any of the following reasons:

- The significant adverse reduction or alteration in the nature and status (other than title) of the officer's position, duties or responsibilities immediately prior to or within 365 days of the change in control.

- The lack of any re-employment opportunity that would utilize the officer's professional skills and abilities.

- A requirement that the officer relocate to a place of employment more than 50 miles from his/her location immediately prior to the change of control.

- The involuntary termination of the officer for reasons other than performance failure or for cause.

**Administrative Rule**

Whereas, the purpose of the Plan is to provide financial assistance to officers whose employment is involuntarily terminated and, conversely, it is not the purpose of the Plan to provide financial assistance to officers who have comparable reemployment opportunities that would utilize the officer's professional skills and abilities; and

Whereas, the Plan Administrator has the authority to make rules and regulations to administer the Plan;

Now, therefore, pursuant to the Plan provisions authorizing the Plan Administrator to make rules and regulations to administer the Plan, the Plan Administrator hereby establishes the following rules, effective January 1, 1999.

. . .

Change in Control

For purposes of the Plan's Change in Control provision:

1.  A "significant adverse reduction or alteration in the nature and status (other than title) of the officer's duties or responsibilities" means any one of the following:

•       a loss of the officer's position where no opportunity exists to work at either the purchaser . . ., the vendor . . ., or the survivor of a merger . . . other than a project assignment;

•       a loss of the officer's position where the only opportunity to work at either the purchaser . . ., the vendor . . ., or the survivor of a merger . . . involves a position with skills and abilities outside of the skills and abilities the officer utilizes in his or her current position;

•       a change in the officer's position from a manager or director of a major unit to an individual contributor in that unit or another unit; or

•       a reduction of more than 10% of the base salary the officer was receiving immediately prior to the change in control . . . .

2.      An officer who declines a reemployment opportunity in a comparable position which does not require the officer to relocate to a place of employment more than 50 miles from his or her location. . . shall not be considered involuntarily terminated by reason of job elimination.

. . .

4.      A "comparable position" means a position within the same functional area which requires similar skills and abilities the officer utilizes in his or her current position and does not result in a reduction of more than 10% of the base salary he or she was receiving immediately prior to the change in control  . . . .