Jeffrey CANNON, Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY
OF AMERICA, et al., Defendants.

No. CIV. 03–86–P–S.

United States District Court,
D. Maine.

Jan. 23, 2004.

Charles W. March, Reben, Benjamin, & March, Portland, ME, Stephen Nagle, Austin, TX, for Plaintiff.

Patricia A. Peard, Bernstein, Shur, Sawyer, & Nelson, Randall B. Weill, Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Gregory Paul Hansel, Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Portland, ME, for Defendants.

## ORDER ON MOTION TO COMPEL DISCOVERY

KRAVCHUK, United States Magistrate Judge.

Jeffrey Cannon has filed suit against Unum Life Insurance Company of America and his former employer, Netsolve, Inc., alleging wrongful denial of employee disability benefits and breach of fiduciary duties. Cannon's claims arise out of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132. Cannon suffers from a drug-induced "dementia" that is characterized by a 15–point drop in IQ and an "organic encephalopathy." According to Cannon's complaint, Unum wrongfully characterized his disability as a "mental illness" in order to subject his claim for long-term benefits to a

twelve-month limitation. In addition to the usual prayer for monetary and declaratory relief, Cannon requests that the Court remove Unum as a fiduciary of the subject disability plan. Currently before the Court is Cannon's motion to compel discovery, which I authorized Cannon to file.[1] (*See* Report of Conference of Counsel and Order, Docket No. 16.) Cannon has requested that Unum permit him to depose certain Unum employees and that Unum provide him with certain documents and information referred to in Unum's administrative file that Unum has failed to produce in connection with this dispute. Unum denied both requests. I order Unum to respond to certain of Cannon's discovery initiatives as set forth herein.

## Background

The mental illness provision on which Unum relied to discontinue Cannon's benefits provides as follows:

MENTAL ILLNESS means a psychiatric or psychological condition regardless of cause such as schizophrenia, depression, manic depressive disorders or other conditions. These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment.

\* \* \* \* \* \*

UNUM will not apply the mental illness limitation to dementia if it is a result of:

-stroke;

-trauma;

-viral infection;

-Alzheimer's disease; or

-other conditions not listed which are not usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment.

Cannon's motion to compel describes the following claims history:

After an elimination period, Unum evaluated Mr. Cannon's claim and began pay-

---

1. In this District, written discovery motions may not be presented without prior leave of court. D. Me. Loc. R. 26(b).

ing disability benefits in September 1997. The person who handled this part of the claim is Robin Cote, an employee of Unum's Atlanta office. Ms. Cote relied upon the opinion of a person name K. Cook, R.N., also of the Atlanta office, who advised accepting Mr. Cannon's claim because "his impairment is 'physical' or organic in nature." (UACL00188.)

On September 24, 1997, Rachelle Mack, R.N.C., performed a "psych consult" for Unum and termed the initial disabling event "traumatic." (UACL00414.)

On December 4, 1998, Peter Gr[a]nnell of the Portland, Maine office states that he is obtaining a medical update, and on January 28, 1999, he refers to such an update, but it does not appear in the file. (UACL00426.)

In April 2000, the claim file was reviewed by Arthur Hackett, also in Unum's Portland, Maine office, as a part of a "PREC" review. (UACL00427.) Mr. Hackett sent the file to Glen Higgins, Ph. D., also an employee. On the basis of the medical records already in the file, and the apparent opinion of Dr. Higgins, a record of which does not appear in the file, Mr. Hackett determined that the mental illness exclusion applies to Mr. Cannon's claim. (UACL00427.)

(Pl.'s Mot. to Compell, Docket No. 17, at 2.) Unum does not dispute any aspect of this recounting.

## Discussion

Cannon seeks to take the depositions of Robin Cote, K. Cook, Arthur Hackett and Glen Higgins. According to Cannon, he would use the depositions to clarify the meaning of numerous shorthand expressions contained in the file such as "TPC", "PTD", and "M & N." (*Id.* At 4.) Additionally, and more to the point, Cannon wants to discover "what internal memoranda or unwritten policies exist or have existed within Unum concerning interpretation of the mental illness language in the disability policy at issue in this case." (*Id.*) Cannon indicates that he would subpoena these documents and use them in conjunction with the depositions. (*Id.*) Cannon's third request seeks "medical

information" referred to in the claims file but not included therein, including any written recommendation produced by Dr. Higgins, whose advice seems to have been the basis for the discontinuance of Cannon's benefits. (*Id.* At 5.) Finally, Cannon wants "to find out how Unum has interpreted 'dementia' and the mental/physical distinction in other cases," including "what kinds of dementia due to 'other conditions' have been treated as covered under the policy language."

In opposition, Unum begins by arguing the familiar refrain that discovery is not appropriate because the Court is being called upon to conduct an administrative review and the governing standard asks only whether there is "substantial evidentiary grounds for a reasonable decision in its favor." (Def.'s Opp., Docket No. 18, at 3 (quoting *Brigham v. Sun Life of Canada*, 317 F.3d 72, 85 (1st Cir. 2003).)) Under such a standard, says Unum, the discovery and presentation of "contradictory evidence" is futile because it would do nothing to alter the result of the litigation. (*Id.* at 4.) This tack is curious, because Cannon has not necessarily asked for "contradictory evidence." Rather, Cannon's requests appear to be geared toward discovery of evidence Unum actually relied on, or at least requested (*e.g.*, the "medical update" and Dr. Higgins's opinion), and evidence that would tend to clarify what, exactly, the rules of the game are when it comes to physical injuries that are treated with psychological methodologies, including psychotropic drugs. I address each of Cannon's requests in turn.

### 1. Short hand abbreviations

■ In its opposition memorandum, Unum clarifies the meaning of "TPC" (telephone conference), "M & N" (mental and nervous) and "PTD" (permanent and total disability). It does not clarify the meaning of "PREC" or "listing 12.02." I will permit Cannon to discover the meaning of these and any other unclear abbreviations in the file by means of an interrogatory.

### 2. Internal memoranda or unwritten policies

■ Unum complains that Cannon's request for internal memoranda and unwritten

policies is an impermissible attempt to discover the mental processes of Unum's claims handlers and medical consultants. I agree that depositions geared toward discovering the mental processes of Unum staff and their consultants are inappropriate because Unum's claim determination already reflects Unum's rationale for discontinuing Cannon's benefits. But this leaves unanswered whether Unum has generated memoranda, policies or guidelines that inform the meaning or application of the mental illness limitation. Such items would not reflect mental processes of claims handlers, but actual internal rules governing the application of the policy language. Obviously, if Unum has internal memoranda or policies that instruct claim handlers how to apply the mental illness limitation, such materials are relevant to the question of whether Unum acted arbitrarily and capriciously in connection with its denial of Cannon's claim. For example, if an internal memorandum existed that favored Cannon's receipt of continuing benefits, the fact that it was disregarded would be powerful evidence of an arbitrary and capricious claims determination. I also observe that Unum has certain fiduciary duties to disclose to claimants materials of this nature. *See* 29 C.F.R. § 2560.503–1(g)(1)(A) (requiring claims administrators to include in a notification of an adverse benefit determination any "internal rule, guideline, protocol, or other similar criterion [that] was relied upon in making the adverse determination, ... or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request"). Accordingly, Unum is ordered to produce any and all internal memoranda and other documents that serve to clarify or otherwise expand upon the meaning of the mental illness limitation, how it should be applied and the kinds of specific illnesses that either do or do not fall within its meaning, including any documents that pertain to "other conditions" giving rise to "dementia" that are excluded from the mental illness limitation.

### 3. The medical update and Dr. Higgins's recommendation

The 1998 "medical update" requested and received by Peter Grannell and the year 2000 recommendation provided by Dr. Higgins can only be understood as evidence relevant to Unum's consideration of Cannon's claim for disability benefits. Both were specifically requested by Unum in connection with its review of Cannon's benefits. It is therefore abundantly clear that production of these materials would not amount to "supplementation" of the record, contrary to Unum's suggestion. These two items were part of the administrative record, whether or not Unum retained them in its paper file. *Doe v. Travelers*, 167 F.3d 53, 58 (1st Cir.1999) ("Finding out just what information [claim fiduciary] had and why it acted as it did depends upon the medical notes provided to it, the exchange of correspondence, and the recollections of oral conversations."). Accordingly, Unum has an obligation to produce these items for Cannon's review. Unum concedes as much, indicating that "Unum Life agrees that the Plaintiff is entitled to the documents on which Unum Life relied when making its decision." (Docket No. 18 at 7.)

According to Unum, the 1998 "medical update" was conducted by one "Dr. Putnam," but "does not appear in written form in the claim file." (Docket No. 18 at 7.) Unum argues that the absence of the written update is insignificant because the information that Dr. Putnam supplied and on which Unum "relied" was *summarized* in notes taken by Mr. Grannell, which are in the file. (*Id.* at 7–8.) Unum further argues that it would serve no purpose to depose anyone at this juncture about what may have existed in Dr. Putnam's update because Mr. Grannell's notes are the best evidence of the content of the update. (*Id.* at 8.) I am not persuaded by Unum's argument. Unum requested the update in connection with its reviews of Cannon's benefits. The questions that were asked of Dr. Putnam clearly pertain to issues that are material to the discontinuance of Cannon's benefits, including the nature of Cannon's course of treatment (the mental illness exception appears to turn largely on whether psychoanalysis or psychotropic drugs are uti-

lized in treatment). Accordingly, the entire update belongs in the file. If the update is currently in Unum's possession or is otherwise available to it, Unum is directed to obtain and produce the update for Cannon's review. In the alternative, if Cannon has independent access to the update, he may submit the document as an addendum to— and part of—the administrative record.

As for the recommendation Dr. Higgins supplied to Mr. Hackett in 2000, Unum indicates that it is contained in the administrative record. Unum references a "note" bearing Bates Stamp 307–06, a copy of which is attached to its opposition in redacted form. I assume that Cannon has a copy of the note in unredacted form If not, Unum will supply him with one. Any other communications between Dr. Higgins and Mr. Hackett in connection with Dr. Higgins's review of the claim, including electronic communications never printed, are to be produced by Unum, regardless of whether they were incorporated into Unum's paper file. Cannon may depose Mr. Hackett and Dr. Higgins concerning the existence and content of any oral communications they had in connection with their review of the file.

 As a final note, I wish to address Unum's representation that Dr. Putnam's medical update "appears to have been concerned [*sic*] and then misplaced." (*Id.* at 8.) According to Unum, this eventuality is of little to no significance because "the claim file contains all the information on which Unum Life relied and contrary evidence would not render Unum Life's decision unreasonable." (*Id.*) It is important to this process that a complete administrative record be maintained and that ERISA fiduciaries not misapprehend that misplacing key documents does not matter so long as portions of the document are preserved in a claim handler's

notes or so long as all of the evidence actually relied on is preserved. I am concerned that Unum's counsel appears to suggest otherwise in his memorandum when he states that the existence of "contrary evidence would not render Unum Life's decision unreasonable." (*Id.*) This is a misstatement of the law. Whether the standard of review is *de novo* or deferential, a reviewing Court ultimately considers the *reasonableness* of the administrator's benefit determination based on a review of the entire record considered by the claim administrator. *Liston v. Unum Corp. Officer Severance Plan*, 330 F.3d 19, 24 (1st Cir.2003) ("Where as here review is under the arbitrariness standard, the ordinary question is whether the administrator's action on the record before him was unreasonable."). Indeed, Unum is itself obligated to conduct "full and fair" reviews of administrative appeals. 29 C.F.R. § 2560.503–1(h).[2] Removal of "contrary evidence" from the record does not comport with full and fair claims review and it should go without saying that it is never reasonable for a fiduciary to discard "contrary evidence." · In the interest of full and fair judicial review, Unum will obtain and produce a copy of Dr. Putnam's medical update. If Dr. Putnam's medical update is no longer available and neither party can produce it for the record, Cannon can depose Mr. Hackett on this issue as well.

### 4. Unum's interpretation of "dementia" and the mental/physical distinction in other cases

Finally, Cannon "seeks to find out how Unum has interpreted 'dementia' and the mental/physical distinction in other cases. As part of this, [Cannon] seeks to find out what kinds of dementia due to 'other conditions' have been treated as covered under the

---

**2.** *See also* 29 C.F.R. § 2560.503–1(h)(2)(iii) (indicating that "full and fair review" procedures are those that "[p]rovide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits," as relevance is defined at "paragraph (m)(8) of this section"); *id.* § 2560.503–1(m)(8)(ii) & (iv) (defining "relevant" materials to include those "submitted, considered, or generated in the course of making the

benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination" and "[i]n the case of a . . . plan providing disability benefits, . . . a statement of policy or guidance with respect to the plan concerning the denied . . . benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination").

policy language." According to Cannon, this evidence would tend to show whether Unum acted arbitrarily and capriciously. (Docket No. 17 at 5.) According to Unum, this request is well out of bounds because it invites hopeless attempts to compare disparate circumstances, would require Unum to conduct an exhaustive search through its records, and would cloud an otherwise straight-forward review with collateral issues. (Docket No. 18 at 9.)

Unum and Cannon both rely on *Liston* for their diametrically opposed positions. In *Liston*, the First Circuit Court of Appeals addressed the issue of judicial discretion to permit discovery in ERISA denial-of-benefits cases when the stated objective of discovery is to supplement the record with evidence pertaining to claims other than the one being reviewed. According to the Court of Appeals, "[S]ome very good reason is needed to overcome the strong presumption that the record on review is limited to the record before the administrator." *Liston*, 330 F.3d at 23. In a denial-of-benefits claim, "the central issue must always be what the plan promised ... and whether the plan delivered." *Id.* at 25. However, the Court of Appeals recognized that the treatment afforded to similarly situated individuals can be an appropriate topic for discovery "in some cases." *Id.* Ultimately, the Court of Appeals ruled that this Court's denial of discovery in *Liston* was not an abuse of discretion because, among other things, the standard being applied for the determination of benefits in that case was "too vague and the variables in [the comparable insureds' circumstances] too numerous to expect that anyone will be identically placed." *Id.* at 26 & n. 5. Contrary to what Unum suggests in its memorandum, the Court of Appeals did not hold that it would have been an abuse of discretion had the Court permitted discovery in *Liston*.

■ I consider it the better exercise of discretion in this case to deny discovery into the *circumstances* of other claimants whose disabilities involved "dementia." However, Cannon has not necessarily requested that he be permitted to discover the particulars of other claims, only "how Unum has interpret-ed 'dementia' and the mental/physical distinction in other cases," including "what kinds of dementia due to 'other conditions' have been treated as covered under the policy language." (Docket No. 17 at 5.) In the context of section 2, *supra,* I have already indicated that Unum will produce any internal materials that inform its application of the "mental illness," "dementia" and "other conditions" language of the policy. By extension, if Unum maintains guidelines or has produced memoranda, tables or listings that serve to expand upon the partial listing of causes contributing to dementia that will not be subjected to the mental illness limitation (*viz.,* stroke, trauma, viral infection, Alzheimer's disease, or "*other conditions not listed*"), it will produce the same.

■ The remaining question is whether Unum should be put to the task of compiling and disclosing all of the dementia-producing disabilities that have escaped the mental illness limitation, if such a compilation is not already available. In effect, this would amount to a requirement that Unum create a listing of "administrative precedents" that should inform its consideration of benefit claims that are premised on disabilities giving rise to dementia, much in the way published judicial opinions serve as binding precedent for future cases. Such a requirement does not strike me as radical, particularly given that Unum owes fiduciary obligations along this line. *See* 29 C.F.R. § 2560.503–1(b)(5) (imposing the "[o]bligation to establish and maintain reasonable claims procedures," including "administrative processes and safeguards designed to ensure and to verify that ... plan provisions have been applied consistently with respect to similarly situated claimants"). My conclusion is that Cannon is entitled to discovery of this kind, but only respecting (1) administrative precedents pertaining, specifically, to whether drug-induced dementia is an "other condition not listed" to which Unum will not apply the mental illness limitation and (2) what procedures Unum has in place to comply with its fiduciary obligation to ensure that the mental illness provision is "applied consistently with respect to similarly situated claimants." Al-

though I permit such discovery, I do not see any reason why it requires a deposition.

## Conclusion

Cannon is pursuing discovery initiatives that are appropriately directed toward completion of the record and toward obtaining a fair understanding of what internal rules and procedures Unum's claims handlers follow when applying the mental illness policy language at issue in this case to his particular form of disability. In order to permit this discovery to go forward, I hereby extend all unexpired deadlines in the Scheduling Order by thirty days.

In summation, Cannon shall submit written interrogatories to Unum regarding any confusing or unclear abbreviations and other terminology in the file within 7 days of this Order. Unum will respond to such interrogatories on or before the extended discovery deadline. In addition, Unum will produce on or before the discovery deadline:

1. All internal memoranda, policy statements, guidelines, protocols or other similar criteria that are relied upon by Unum employees to make determinations regarding the mental illness limitation, including any documents that pertain to "other conditions" giving rise to "dementia" that are excluded from the mental illness limitation and including any listings that serve to expand upon the partial listing of causes contributing to dementia that are not treated by Unum as subject to the mental illness limitation.

2. A statement of all "administrative precedents" involving "drug-induced dementia" and its relationship to the mental illness limitation, including both those claims to which the 12–month limitation has been applied and those claims that have been voluntarily paid beyond the 12–month limitation period.

3. A statement of what procedures, if any, Unum has in place to comply with its fiduciary obligations under 29 C.F.R. § 2560.503–1(b)(5) to treat similarly situated claimants "consistently."

4. All documents related to Dr. Putnam's 1998 medical update and Dr. Higgins's 2000 review and recommendation.

Finally, Unum will cooperate with Cannon to make Mr. Hackett and Dr. Higgins available for deposition at a mutually convenient date, prior to the extended discovery deadline. The deposition of Mr. Hackett, if it is taken, will be limited to addressing the content of Dr. Putnam's medical update, if and only if the written update is not otherwise produced, and to addressing the existence and content of any oral communications between Mr. Hackett and Dr. Higgins in connection with their review of the file. The deposition of Dr. Higgins, if it is taken, will likewise be limited to addressing the existence and content of any oral communications between Mr. Hackett and Dr. Higgins in connection with their review of the file.

The motion to compel discovery is **GRANTED**, to the extent set forth herein.

*SO ORDERED.*