**Barbara JOHNSON, Plaintiff**

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA and Unumprovident Corporation, Defendants.**

No. 03–CV–68–P–S.

United States District Court, D. Maine.

Aug. 10, 2004.

Jon Holder, Holder & Grover, Portland, ME, for Barbara Johnson.

Patricia A. Peard, Ronald W. Schneider, Jr., Bernstein, Shur, Sawyer, & Nelson,

Portland, ME, for UnumProvident Corporation, Unum Life Insurance Company of America.

## ORDER

SINGAL, Chief Judge.

Plaintiff Barbara Johnson alleges that Unum Life Insurance Company of America and UnumProvident Corporation (together "Defendants" or "Unum") unlawfully terminated her long term disability benefits. Through this action, she seeks relief pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. Presently before the Court are: Defendants' Motion for Summary Judgment (Docket # 41), Plaintiff's Motion for Summary Judgment (Docket # 43) and Defendants' Motion to Strike Portions of Plaintiff's Objection to Defendants' Statement of Material Facts (Docket # 59). For the reasons set forth below, Defendants' Motion to Strike is DENIED, Defendants' Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Summary Judgment is DENIED.

During the time that the above motions have been under advisement, the Court has also received Plaintiff's Objection to Magistrate Judge Kravchuk's Denial of Plaintiff's Motion for Reconsideration (Docket # 70). The Court has fully considered the arguments presented in that Objection as well as the underlying motions in the course of deciding the pending cross motions for summary judgment. That said, because the Court does not believe that the Magistrate Judge's Order Denying Plaintiff's Motion for Discovery and Reconsideration (Docket # 68) is clearly erroneous or contrary to law, the Court finds Plaintiff's Objection to be without merit. Thus, to the extent Plaintiff seeks to have the Magistrate Judge's ruling modified or set aside pursuant to Federal Rule of Civil Procedure 72(a), the Court DENIES Plaintiff's Objection (Docket # 70).

## I. Motion to Strike

Before turning to the merits of the cross motions for summary judgment, the Court must resolve Defendants' Motion to Strike. This Motion was filed in connection with the statements of material fact, which each side was required to file in accordance with Local Rule 56. Through this Motion, Defendants object to almost all of Plaintiff's responses that consist of anything more than "Admitted." Most, if not all, of Defendants' objections have some merit in that they detail Plaintiff's failure to comply with either the letter or the spirit of Local Rule 56. Nonetheless, in this Court's assessment, conducting an intensive line-by-line review of Plaintiff's violations of Local Rule 56 would do little to assist the Court in achieving the goals of this local rule or resolving the merits of the pending cross motions for summary judgment. Thus, in an exercise of its discretion, the Court DENIES Defendant's Motion to Strike.

In general, Local Rule 56 contemplates that the Court will discount any statement of material fact or a response thereto that contains irrelevant argument or factual assertions that are not supported by appropriate record citation. *See* Local Rule 56(e). In accordance with these principles, the Court has disregarded most of the objectionable portions of Plaintiff's Objections to Defendants' Statement of Material Facts (Docket # 55) brought to the Court's attention through Defendants' Motion to Strike. The Court has also disregarded Plaintiff's belated attempt to add additional facts to the record via attachments to Plaintiff's Response to Defendants' Motion to Strike (Docket # 62). Moreover, the Court notes that its view of the facts and decision on the merits would not be changed even if it had considered Plain-

tiff's objections and other belated supplementary materials.

Having conducted a complete review of both sides' statements of material facts and the responses thereto, it is clear that the only relevant factual disputes between the parties center on disagreement regarding attempts by both sides to summarize, excerpt and characterize various cited portions of the administrative record at issue in this case. The Court has resolved these disputes by conducting a first-hand review of the administrative record, focusing on the pages cited by the parties.[1] In accordance with this procedure, the Court lays out the material facts below as gleaned from the parties' submissions and the Court's review of the administrative record.

## II. Cross Motions for Summary Judgment

### A. Standard of Review

Generally, a party is entitled to summary judgment if, on the record before the court, it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if it could be resolved in favor of the nonmoving party by a rational fact finder drawing reasonable inferences. *See, e.g., Ward v. Mass. Health Research Inst.,* 209 F.3d 29, 32 (1st Cir.2000). A fact is "material" if "the contested fact has

the potential to change the outcome of the suit under governing law if the dispute over it resolved favorably to the nonmovant." *Navarro v. Pfizer Corp.,* 261 F.3d 90, 93–94 (1st Cir.2001). As the First Circuit has noted, the mere existence of cross motions for summary judgment generally does not change the method for construing the facts. *See Leahy v. Raytheon Co.,* 315 F.3d 11, 17 n. 5 (1st Cir. 2002). In accordance with this standard, the Court has gleaned the following undisputed facts from the administrative record:

### B. Background

### 1. Plaintiff's Unum Insurance Policy

Plaintiff Barbara Johnson ("Johnson") worked as a staff nurse in the Southern Maine Medical Center Psychiatry Department through September 25, 1996, when she left work because of her disability. As an employee of Southern Maine Medical Center, Johnson was covered by a group long term disability insurance policy issued by Unum Life Insurance Company bearing the Policy Number 503143 (the "Policy"). Within the body of the Policy the term "UNUM" is used to refer to Unum Life Insurance Company. The Policy Certificate Section explicitly states: "When making a benefit determination under the policy UNUM has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy." (UACL 1036.)[2]

---

1. In many other cases, the Court might well resolve these issues related to the argumentative nature and mischaracterization of the stated material facts by summarily denying the motions for summary judgment on the basis of genuine issues of material fact. However, there is no doubt that this is a case that is properly resolved via the pending cross motions for summary judgment and the Court sees no reason to delay resolution of Plaintiff's claim. *See Curtin v. Unum Life Ins. Co.,* 298 F.Supp.2d 149, 152 (D.Me.2004) ("In ERISA cases where the decision is to be made

by the court based solely on the administrative record, summary judgment is 'merely a mechanism for tendering the issue.'") (quoting *Liston v. Unum Corp. Officer Severance Plan,* 330 F.3d 19, 24 (1st Cir.2003)).

2. The Court has been provided with a copy of the full administrative record in this case containing a "UACL" Bates prefix. As necessary, the Court's Order will refer to the administrative record by using these Bates numbers.

At the time of her original application for benefits Johnson was earning between $30,000 and $60,000 per year. As a result, Johnson was subject to the following Policy definitions of disability:

> You are disabled when UNUM determines that:
>
> — you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and
>
> — you have a 20% or more loss in weekly earnings due to the same sickness or injury.
>
> You will continue to receive payments beyond 60 months if you are also:
>
> — working in any occupation and continue to have a 20% or more loss in your indexed monthly earnings due to your sickness or injury; or
>
> — not working and, due to the same sickness or injury, are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

(UACL 1029.) The Policy goes on to define the term "limited" as "what you cannot or are unable to do" and the phrase "material and substantial duties" as those "duties that are normally required for the performance of your regular occupation; and cannot be reasonably omitted or modified." (UACL 1028–29.) "Regular occupation" is defined as "the occupation you are routinely performing when your disability begins." (UACL 1028.)

The Policy explicitly lays out the "maximum period of payment" for which an insured may receive benefits. As it pertained to Johnson, the Policy stated that Unum would stop paying benefits if "during the first 24 months of payments, when you are able to work in your regular occupation on a part-time basis but you choose not to." (UACL 1021.) Alternatively, the Policy provided "after 24 months of pay-ments, when you are able to work in any occupation on a part-time basis but choose not to." (*Id.*) The Policy defined "part-time basis" as "the ability to work and earn between 20% and 80% of your indexed monthly earnings." (*Id.*) In relevant part, the Policy also explained that Unum would no longer pay benefits if "you are no longer disabled" or "your disability earnings exceed the amount allowable under the plan." (*Id.*)

### 2. Plaintiff's Medical Condition & Claim for Benefits

#### a. The Initial Claim

Johnson had worked as a registered nurse for approximately 23 years when she initially filed for disability benefits in October 1996. At that time, Johnson was plagued by neck and back problems caused by degenerative disc disease. Johnson's degenerative spine condition was initially diagnosed in 1987 after Johnson had her neck grabbed by a patient and began to experience numbness and tingling. She had cervical spine fusion surgery in 1993.

On her initial claim form, Johnson stated that the last day she had been able to work in her position at Southern Maine Medical Center was September 25, 1996. In connection with her initial claim for benefits, Johnson reported that within the field of nursing she had experience with ".mental health nursing, case management, supervisory experience [and] training/teaching." (UACL 047.) She noted that she was "in the process of seeking voc[ational] counseling." (*Id.*)

After a lengthy review of Johnson's claim, Unum sent Johnson a letter dated December 17, 1997 in which it informed Johnson that it was denying her claim because Unum's investigation had concluded that Johnson was "capable of performing sedentary nursing jobs within the

nurse occupation." (UACL 359.) Johnson hired an attorney and informed Unum via a letter dated February 13, 1998 that she wished to appeal the denial of her claim. In connection with that appeal, Johnson, with the able assistance of counsel, provided Unum with additional information to support her claim and established that some of the factual information Unum and its experts had relied on was incorrect. (*See* UACL 458.) On April 14, 1998, Unum reversed its initial decision and awarded Johnson benefits as of December 25, 1996.[3]

### b. Unum's 2001 Review of the Claim

In a letter dated June 1, 2001, Unum informed Johnson that it intended to review her eligibility to continue receiving benefits after December 25, 2001. As of that date, Johnson would have had received benefits for 60 months. Thus, under the terms of the Policy the definition of disability essentially changed, meaning that Johnson was only eligible for benefits if Unum determined that she was "unable to perform the duties of any gainful occupation for which [she] was reasonably fitted by education, training or experience." (UACL 692 & 1029.)

In connection with the review, Dr. Merrill, a chiropractor and one of Johnson's long-time treating physicians completed at Estimated Functional Abilities Form as requested by Unum. On the form, Dr. Merrill indicated that Johnson could only occasionally lift, push or pull items weighing less than ten pounds. He noted that Johnson could only occasionally climb stairs. He also stated that Johnson could not bend, kneel, crawl, engage in repetitive movements with her feet or use her hand for activities involving "power gripping" and "medium dexterity." (UACL 690.) He noted that Johnson's condition "is essentially unchanged as compared to previous evaluation." With respect to Johnson functional ability as of May 2001, Dr. Merrill explained:

> The patient is currently leading a very sedentary life style and is currently taking courses in order to improve her teaching skills and medical background. Unfortunately she is not capable of doing any of the tasks of an RN especially in an emergency situation or working with disabled or psychiatric patients.... At this time I would not anticipate any change in the patient's physical or functional ability to perform the usual and customary duties as a registered nurse. I would recommend she continue to pursue additional education so that she can pursue a teaching career as opposed to a clinical setting of actually treating and assisting patients.

(UACL 689.) In a supplemental statement following an appointment on June 13, 2001, Dr. Merrill listed his objective findings: "Radiographic evaluation of the spine and extremities revealed degenerative changes consistent with hypertrophic osteoarthritis of the cervical, thoracic and lumbar spine. Radiographs of knee revealed chronic Grade IV patella subluxation which appears to be secondary to chondromalacia patella. Orthopedic testing is positive including cervical compression test." As to Johnson's restrictions, Dr. Merrill stated that she was "capable only of sedentary [life] style at this time, sitting standing [and] weight bearing all contraindicated." (UACL 699.)

---

**3.** Johnson's Policy included a 90 day waiting period, known as an elimination period, during which an insured had to meet the Policy definition of disability but was not eligible for benefits. December 25, 1996 marked the end of Johnson's elimination period assuming she became disabled on September 26, 1996.

In addition to seeing Dr. Merrill for treatment while she was receiving benefits, Johnson had continued to see Dr. Backer at least annually. Dr. Backer was Johnson's personal physician and had provided statements supporting Johnson's initial claim for benefits. In connection with Unum's 2001 review, Dr. Backer's office reported last seeing Johnson on October 17, 2000 and noted that that Johnson was scheduled for an annual appointment on July 12, 2001.

In connection with Unum's 2001 review of Johnson's claim, Unum also collected information from Johnson. In her written statement, Johnson reported that she did not think she was able to return to work part-time "at this time" and also noted that she did not believe that she would ever be able to return to work full-time. (UACL 701.) She described that "maintaining [her] home and [herself] is a full-time job. It takes a long time to complete tasks." (*Id.*) As an example, Johnson reported that on a good day she could wash her kitchen floor if she sat on a stool and went slowly. During a phone interview with a Unum representative, Johnson reported that she had received a Bachelor of Science degree from the University of New England in May 2001.[4] She also expressed a desire to write children's books. In the same interview, Johnson lamented not being able to be independent due to chronic pain and inability to bear weight.

After reviewing the updated information provided by Johnson and Dr. Merrill, Unum scheduled Johnson for an independent medical exam. On October 24, 2001, Johnson went for this exam with Dr. Vincent Herzog, D.O. After an exam and review of Johnson's chiropractic records as well as Johnson's self-reported medical history, Dr. Herzog diagnosed Johnson with depression, obesity and deconditioning syndrome, chronic vocational dysfunction, history of cervical fusion, history of chronic low back pain and disk surgery. Dr. Herzog concluded:

> Based on examination, I do think [Johnson] has initially part time light duty work capacity and could like[ly] progress to full time light duty capacity. With her history of cervical fusion and arm discomfort, I would recommend only occasional push/pull activity 21 minutes per hour, arm work right and left only occasional 21 minutes per hour. I would not recommend any type of repetitive overhead tasks. She has unlimited sitting capacity. I would only recommend 5 to 10 pounds for lifting and carrying, which is very light. I would recommend that she start at a four hour day and increase one hour every other week so that within eight weeks she could try full time light duty work. It is not clear what her skills and interests are with regard to vocational pursuits. She appears to have a perception that she has no work capacity and feels she is disabled. Based on physical examination there are some inconsistencies.

(UACL 752.)

Following receipt of Dr. Herzog's report, Unum also ordered a vocational re-

---

4. Various parts of the administrative record appear to infer from the awarding of Johnson's degree that she was actively attending classes, etc. in 2001. In fact, in a handwritten letter dated June 9, 2002, Johnson recounts her struggle to complete her degree as follows: "I was dismissed from [the University of New England] in 1998 and was never re-instated. I appealed their decision and my instructor agreed to change my grades if I could complete the 2 assignments I had left. It took me 5 months but I was able to finish 3 days before graduation. I did not attend any classes and completed the work at home . . . ." (UACL 866.)

view from Terry Hopkins, a Certified Rehabilitation Consultant. This review concluded that despite her restrictions and limitations, Johnson had "transferable skills" to other RN positions such as insurance case manager, utilization review, nurse consultant, or telephonic case manager. (UACL 762.) On November 16, 2001, Dr. Barry Gendron, D.O., reviewed the information compiled by Unum and concluded that "sedentary capacity is objectively supported on a physical basis." (UACL 764.)

On December 17, 2001, Johnson called to complain about her independent medical exam with Dr. Herzog According to Unum's notes from that call, Johnson described the exam as an "abomination" saying that Dr. Herzog "barely looked at her." (UACL 775.) During the call, Johnson also reported that she would be forwarding a report from a new physician, along with new x-ray studies of her spine and shoulder. Dr. Merriam's report, dated November 7, 2001, detailed his impressions of Johnson's x-ray studies as follows: "Most significant findings at C5/C6 where there is severe degenerative disc disease and spondylosis. There is apparent fusion of the C6/C7 Level, which may be post surgical. Please correlate clinically." With respect to Johnson's right shoulder, Dr. Merriam diagnosed "acromioclavicular joint hypertrophy." (UACL 776.) Unum had both a physical therapist and a physician review the x-rays and the report from Dr. Merriam; both concluded that these new materials did not change the conclu-

sions previously reached by Dr. Gendron and Dr. Herzog.

In a four page letter dated December 31, 2001, Unum informed Johnson that it was terminating her disability benefits as of December 25, 2001.[5] In light of Dr. Herzog's recommendation that she return to work part-time and then increase to full-time, Unum informed Johnson that it would pay her an additional "2 months transition benefits to allow [her] to increase to full time work." (UACL 783.) Because of these "transition benefits," Johnson essentially received benefits through February 19, 2002. Unum's explanation of its decision to terminate Johnson's benefits indicated that she "no longer met the contractual definition of disability for a physical condition" and that she had "exceeded [the] 24 months of benefits payable for conditions related to a mental illness."[6] (UACL 783.)

### c. Johnson's Appeal of the 2001 Decision to Terminate Benefits

Johnson appealed the decision to terminate her benefits and Unum acknowledged receipt of her appeal in a letter dated March 22, 2002. After "a full review of [Johnson's] file," Unum sent a letter dated April 23, 2002 in which it announced that it was upholding its initial decision to terminate Johnson's benefits as of December 2001. In explaining the factual basis for its decision, Unum noted: (1) that both Dr. Herzog and Dr. Merrill, Johnson's own chiropractor, indicated that she had seden-

5. Although the footer of this letter refers to Unum Life, the letterhead suggests the letter is coming from "UnumProvident." (UACL 786.)

6. The December 31, 2001 letter from Unum appears to misrepresent the types of illnesses that have a limited 24 month pay period. Although the language of the Policy appear to limit benefits for mental illnesses to 24

months, the letter sent to Johnson indicated that this time limitation also applied to any disability "due to a sickness or injury, which [is] primarily based on self-reported symptoms." (UACL 786.) This limitation of coverage on disabilities with "primarily self-reported symptoms" does not appear in the Policy. (See UACL 1020–1021.)

tary work capacity, (2) that Johnson's file "indicates malingering, poor effort and symptom exagge ration during testing on several occasions," (3) that Johnson had completed a bachelor's degree in May 2001, and (4) that there were sedentary occupations that Johnson could perform that were available in her local labor market. (UACL 826.)

On May 13, 2002, Dr. Larry Anderson of Rheumatology Associates, P.A., sent Unum his office notes on Johnson. According to these notes Dr. Anderson first saw Johnson on February 26, 2002. Dr. Anderson listed the following diagnoses based on his initial exam:

1.  Osteoarthritis of the cervical and lumbar spine with history at least raising the possibility of lumbar spineal stenosis. She describes morning stiffness, but there is no other clinical evidence to suggest axial disease or systemic rheumatic disease.

2.  Probable osteoarthritis of the right knee.

3.  Possible carpal tunnel syndrome.

4.  Mechanical foot problems with pes planus.

5.  Morbid obesity.

(UACL 832.) In his most recently documented visit with Johnson on May 13, 2002, Dr. Anderson noted that Johnson was challenging a recent termination of her disability benefits and that he had told Johnson that he would "support her appeal." (UACL 829.) Besides this note, Dr. Anderson's treatment notes do not indicate any opinion regarding Johnson's ability to undertake work in a sedentary occupation.

Unum had one of its in-house physicians, Dr. Woolson Doane, review the new information from Dr. Anderson. In a file note dated June 7, 2002, Dr. Doane concluded that "new information does not suggest [restrictions and limitations] as of 12/24/01 that would preclude full-time sedentary work capacity." (UACL 837.) Unum subsequently sent Johnson a letter dated June 7, 2002 in which it explained that the information from Dr. Anderson did not provide a basis for the previous decision to uphold the termination of benefits. In this letter, Unum explained its position that since it had found Johnson was no longer disabled as of December 24, 2001, her coverage under the Policy ended as of that date. As a result, Unum explained, "Any worsening in your condition or new diagnosis after December 24, 2001 is not covered." (UACL 840.) Unum's June 7, 2002 letter closed by informing Johnson that she had "exhausted all administrative remedies." (UACL 839.)

### C. Discussion

### 1. Review of Unum Life's Actions under the Arbitrary and Capricious Standard

Following *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the denial of benefits by an administrator of a plan covered by ERISA is reviewed by courts using an "arbitrary and capricious" standard if the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *See id.* at 115, 109 S.Ct. 948. If the terms of the plan do not give the administrator or fiduciary discretionary authority to determine eligibility or construe the terms of the plan, judicial review proceeds under a *de novo* standard. *See id.* When applying an "arbitrary and capricious" standard of review to a benefits determination, "the district court must ask whether the aggregate evidence, viewed in the light most favorable to the non-moving party, could support a rational determination that the

plan administrator acted arbitrarily in denying the claim for benefits." *Leahy*, 315 F.3d at 18. The mere existence of contrary evidence does not necessarily render the decision to deny benefits arbitrary. *See, e.g., Vlass v. Raytheon Employees Disability Trust*, 244 F.3d 27, 30 (1st Cir. 2001). Rather, the insurer's decision must be upheld "if it was within [the insurer's] authority, reasoned, and supported by substantial evidence in the record." *Boardman v. Prudential Ins. Co.*, 337 F.3d 9, 15 (1st Cir.2003) (quoting *Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 184 (1st Cir.1998)) (alteration in original).

■ The certificate section of the Policy at issue clearly states: "When making a benefit determination under the policy UNUM has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy." (UACL 1036.) This language and its placement within the certificate section of the Policy is clearly sufficient to bring this Policy within the heartland of plans that qualify for deferential review under the arbitrary and capricious standard. *See, e.g., Sidou v. Unumprovident Corp.*, 245 F.Supp.2d 207, 218 (D.Me.2003); *Wade v. Life Ins. Co.*, 271 F.Supp.2d 307, 318–319 (D.Me.2003). Thus, the Court begins by asking whether the administrative record viewed in the light most favorable to Johnson suggests that Unum Life's decision to deny benefits was reasonable. In answering this question, the Court does not substitute its own judgment for that of Unum Life. *See Terry v. Bayer Corp.*, 145 F.3d 28, 40 (1st Cir.1998) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)).

■ As described above, in 2001, Unum undertook an investigation of whether Johnson was able to perform any gainful occupation for which she was reasonably fitted by education, training or experience. Having reviewed the administrative record assembled in connection with this review, the Court does not find Unum's conclusion that Johnson could perform sedentary work irrational. Rather, Unum's decision was supported by substantial evidence. *See, e.g., Gannon v. Metropolitan Life Ins. Co.*, 360 F.3d 211, 213 (1st Cir.2004); *Lopes v. Metropolitan Life Ins. Co.*, 332 F.3d 1, 6 (1st Cir.2003). Specifically, the reports of Dr. Merrill, Johnson's chiropractor, and Dr. Herzog, the independent medical examiner, both suggested that Johnson had at least some sedentary work capacity. In addition, Johnson's completion of her bachelor's degree and expressed interest in writing children's books combine to suggest that she had both the skills and an admirable desire to engage in gainful and meaningful work. Undoubtedly, the record also documents that Johnson has serious back, neck and shoulder problems that impair her ability to do physical activities, including many aspects of home maintenance. However, the transferable skills analysis conducted by Unum found that Johnson's training and work experience made her qualified for various sedentary occupations that involve minimal physical activity.

Even if Johnson was not able to work in any of these sedentary occupations on a full-time basis, the fact remains that the language of the Policy allowed Unum to terminate Johnson's benefits upon finding that she was able to "work in any occupation on a part-time basis but chose not to." (UACL 1021.) None of the reports from the medical professionals who examined Johnson or her medical records indicated that she was unable to do part-time sedentary work. Rather, it appears that everyone but Johnson believed she could perform sedentary work on at least a part-time basis. Faced with this administrative

record, the Court would be hard-pressed to conclude that Unum's decision to terminate Johnson's benefits was arbitrary and capricious.

### 2. Plaintiff's Request for *De Novo* Review

Based on allegations that the decision in this case was actually made or influenced by UnumProvident, Plaintiff argues that she is entitled to *de novo* review of the decision to deny her claim. Pursuant to a *de novo* review, this Court would be required to examine the administrative record through a less deferential lens and thereby determine whether Defendants' decision to deny Johnson's claim was correct.

Plaintiff's argument raises two questions—one factual, the other legal. Factually, the Court would need to determine: What role did UnumProvident (the ultimate parent holding company of Unum Life) play in Unum Life's discharge of its fiduciary duties under the Policy?[7] Legally, the Court would need to address: What influence or role, if any, may a parent holding corporation have in the discharge of fiduciary duties by an indirect wholly owned subsidiary when only the subsidiary possesses explicit discretionary authority under the ERISA-regulated plan?[8] The parties' briefs, along with the materials and cases cited in support of their cross motions, do not offer much assistance in answering either of these questions.

■ In support of her argument that UnumProvident's alleged involvement in the decision to deny Johnson benefits requires this Court to conduct a *de novo* review, Plaintiff cites *Rodriguez–Abreu v. Chase Manhattan Bank*, 986 F.2d 580 (1st Cir.1993). In the portion of the *Rodriguez–Abreu* decision relevant to the issue at hand, the First Circuit affirmed the decision of the district court to conduct a *de novo* review when the evidence showed that all communication regarding a decision to deny benefits came from a plan administrator who was not granted or delegated discretionary authority under the terms of the plan at issue. *Id.* at 583–85. In other words, *Rodriguez–Abreu* stands for the proposition that only those fiduciaries who are explicitly granted or delegated discretionary authority under the terms of the plan are entitled to have their decisions reviewed under the deferential "arbitrary and capricious" standard of review. Thus, when a decision to deny benefits is

**7.** As Plaintiff alludes to in her submissions on the pending motions, Unum, in connection with its reply papers on a previous motion to dismiss, conceded that "UnumProvident is a publicly traded holding company that employs the people who process claims for benefits pursuant to Unum Life policies." Nonetheless, UnumProvident also insisted that "UnumProvident's employees ... are controlled by Unum Life for the purposes of administering claims under Unum Life's policies." (Def.'s Reply to Mot. to Dismiss (Docket #11) at 2.) Of course, mere allusions to Defendant's Reply papers does not amount to production of "specific facts, in suitable evidentiary form, [that] establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999). Nonetheless, the Court acknowledges

that the docket in this case is replete with Plaintiff's belated and unsuccessful attempts to obtain further discovery on this "Unum-Provident issue." (*See, e.g.*, Docket # s 40 & 68.) It is for this very reason that the Court has taken the time to consider whether a *de novo* review would change the outcome of this case. However, having reviewed the administrative record, the Court concludes the outcome would be the same, thereby making any additional discovery on the "UnumProvident issue" futile.

**8.** The corporate relationship between Unum-Provident and Unum Life was previously described for the Court in the Affidavit of Susan N. Roth, dated April 23, 2003 (Ex. 2 to Docket #5).

made by a person or entity without explicit discretionary authority, the Court should conduct a *de novo* review. *See, e.g., Rubio v. Chock Full O'Nuts Corp.*, 254 F.Supp.2d 413, 425 (S.D.N.Y.2003); *Davidson v. Liberty Mutual Ins. Co.*, 998 F.Supp. 1, 8–9 (D.Me.1998).

It is undisputed that UnumProvident Corporation was not granted or delegated any discretionary authority under the terms of this Policy. Thus, if UnumProvident, rather than Unum Life, decided to deny Johnson's claim, Plaintiff would arguably be entitled to *de novo* review. However, the record before the Court does not establish that UnumProvident made the decision to terminate Johnson's benefits, nor does it create a trialworthy issue as to whether UnumProvident was ultimately responsible for the decision to terminate Johnson's benefits. *See Sidou*, 245 F.Supp.2d at 219.

Assuming for the moment that Plaintiff could establish that UnumProvident played an improper role in denying her claim and thereby open the door to *de novo* review, such a review would make this case a much closer call. Upon reviewing the entire administrative record, one cannot help but conclude that at all stages Unum's review focused on evidence that suggested Johnson was not disabled, as the term is defined in the Policy, while ignoring the evidence that suggested that Johnson was in fact (and likely still is) suffering from genuine impairments. Nonetheless, while Unum's review appears to have been somewhat selective, even a full review of the administrative record leads this Court to conclude that Johnson had at least some sedentary work capacity as well as transferable skills that would have allowed her to work in gainful sedentary occupations.[9]

Thus, even under *de novo* review, this Court would conclude that Unum's decision to terminate Johnson's benefits after 60 months was correct under the terms of the Policy. In light of the Court's conclusion that the same outcome is warranted in this case under either *de novo* or arbitrary and capricious review, the Court need go no further in addressing the factual and legal questions regarding what role, if any, UnumProvident played in the decision to deny Johnson benefits.

## III. Conclusion

For the reasons explained above, the Court DENIES Defendants' Motion to Strike and Plaintiff's Motion for Summary Judgment. The Court GRANTS Defendants' Motion for Summary Judgment and hereby ORDERS the Clerk to enter a judgment in favor of Defendants.

SO ORDERED.

---

**9.** In his review, Dr. Herzog concluded only that it was "like[ly]" that Johnson would be able to do such sedentary work full time. Upon *de novo* review, the Court might question whether this could serve as a reasonable basis for concluding that Johnson would in fact be capable of working full time by February 2002 (the end of the "transitional benefits"). However, under the terms of the Policy, Johnson's benefits could be terminated in December 2001 if the record supported a finding that she was capable of working even on a "part-time basis" but chose not to return to work. Based on the vocational analysis, it appears that the sedentary jobs Johnson could have performed would have allowed her to "earn between 20% and 80% of your indexed monthly earnings" (the Policy's definition of "part-time"). (UACL 1021.) Nonetheless, no portion of the record suggests that Johnson returned to work even on a part-time basis.