**Richard E. TRIPP, Plaintiff,**

v.

**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, Defendant.**

No. CV–03–40–B–W.

United States District Court, D. Maine.

Sept. 17, 2004.

David A. Chase, MacDonald, Chase & Dufour, Bangor, ME, for Richard E Tripp, Plaintiff.

Neal F. Pratt, Verrill & Dana, A. Robert Ruesch, Verrill & Dana, Portland, ME, for Hartford Life and Accident Insurance Company, Defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WOODCOCK, District Judge.

### I. Introduction

The Plaintiff, Richard E. Tripp ("Tripp"), a former employee of Wal–Mart Stores, Inc. ("Wal–Mart"), alleges the Defendant, Hartford Life and Accident Insurance Company ("Hartford"), unlawfully terminated his long-term disability benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Because Hartford's denial of benefits was based on substantial evidence in the record, this Court GRANTS summary judgment in favor of Hartford.

### II. Factual Background

Tripp began full-time work for Wal–Mart on May 13, 1996 as an "unloader." (Pl.'s SMF at ¶ 1 (Docket # 15)). Wal–Mart provided Tripp disability insurance as a benefit through Hartford.[1] (*Id.* at ¶ 2). Under the terms of the Disability Insurance Plan ("Plan"), if he became unable to perform the essential duties of his occupation, Tripp would first be entitled to short-term disability benefits up to twelve months and then to long-term disability benefits if unable to perform the essential duties of any occupation for which he was qualified by education, training or experience.[2] (Def.'s SMF at ¶ 5 (Docket # 16)).

1. Under the terms of the policy, Hartford provides insurance and administers any claims for benefits under the Disability Insurance Plan ("Plan"). (Def.'s SMF at ¶¶ 1, 2 (Docket # 16)). The parties seem to have agreed the Plan is subject to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* In his Complaint, Tripp alleges, "The Plan is an employee welfare benefit plan within the meaning of [ERISA]." (Pl.'s Comp. at 5 (Docket # 1)). Hartford refused to respond to this allegation, arguing it stated "conclusions of law and so requires no affirmation or denial by Defendant." (Def.'s Answer at 5 (Docket # 5)). There is nothing directly on point in the parties' Statements of Material Fact, but both parties have argued the case as if the provisions of ERISA apply, and this Court assumes they must.

2. The Plan contains different durational limits for the receipt of long-term disability benefits,

On September 28, 1999,[3] Tripp's primary health care provider, John C. Baker, M.D., took Tripp out of work because of complaints of fatigue, malaise, cough, hemoptysis,[4] and hematemesis.[5] (Pl.'s SMF at ¶ 3). On October 12, 1999, Tripp made a claim by telephone for short-term disability benefits. (Def.'s SMF at ¶ 8). Beginning October 29, 1999 [6] through April 10, 2000, Tripp received short-term disability benefits from Hartford, and from April 11, 2000 through November 5, 2001, Tripp received long-term disability benefits. (*Id.* at ¶ 22; Pl.'s SMF at ¶ 40). On November 5, 2001, Hartford terminated Tripp's long-term disability benefits, because it determined he was not prevented from performing the "essential duties of any occupation to which (he was) qualified by education, training or experience." (Def.'s SMF at ¶ 5; Pl.'s SMF at ¶ 40). Tripp has filed suit challenging the termination of his long-term disability benefits.

Returning to the fall of 1999, Dr. Baker initially treated Tripp with Paxil, Prozac, and Prilosec; upon Dr. Baker's referral, Tripp was seen on December 13, 1999 by Thaddeus H. Jozefowicz, M.D., a neurologist. (Pl.'s SMF at ¶ 4, Def.'s SMF at ¶ 10). Dr. Jozefowicz disagreed with Dr. Baker's initial medical assessment, stating, "I feel much less strongly that he has an organic reason for weakness and feel more

likely than not it is either [psychiatrically] or drug related." [7] (Def.'s SMF at ¶ 11).

On January 31, 2000, Gary L. Inman, Examiner at Hartford, denied Tripp's claim for short-term disability benefits after December 26, 1999 on the grounds that "medical evidence ... does not establish Total Disability from your occupation as defined in the policy." (*Id.* at ¶ 13). Tripp was provided an opportunity to submit additional information. (*Id.*). On February 1, 2000, David Goodenough, M.D., prepared an electromyography report on Tripp and concluded that, although a primary muscle disease affecting energy metabolism was "possible," there was "[n]o evidence of any significant polymyositis or other inflammatory myopathy." (*Id.* at ¶ 14). On February 3, 2000, Dr. Jozefowicz referred Tripp to Massachusetts General Hospital for further evaluation, raising the possibility of "mitochondrial myopathy, McArdles disease, or perhaps even a myoesthetic syndrome." (*Id.* at ¶ 15).

On February 29, 2000, Inman issued a second denial of Tripp's claim for disability benefits on the same grounds. (*Id.* at ¶ 17). However, following the receipt of a second letter from Dr. Jozefowicz, Robert E. Burr, M.D., Hartford's Associate Medical Director, conducted a medical review and concluded that Tripp should be considered disabled from his own occupation at

depending on the employee's age when he became totally disabled. Hartford does not contend Tripp has exceeded the potential durational limit for long-term disability benefits.

**3.** Tripp's last day of work at Wal–Mart was September 23, 1999 with disability commencing on September 28, 1999. (Def.'s SMF at ¶ 7; Pl.'s SMF at ¶ 3 (Docket # 15)).

**4.** "Hemoptysis" is defined as "an expectoration of blood from some part of the respiratory tract." *Webster's Third New International Dictionary* 1056 (2002).

**5.** "Hematemesis" is defined as the "vomiting of blood." *Id.* at 1053.

**6.** Tripp's short-term disability benefits began after the expiration of an Elimination Period provided for in the Plan.

**7.** Tripp was treated with anti-depression medication until November 1999. (Def.'s SMF at ¶ 10). A December 15, 1999 toxicology urine drug screen revealed positive levels of cannabinoids and nicotine in Tripp's urine. (*Id.* at ¶ 12).

that time. (*Id.* at ¶ 18; Pl.'s SMF at ¶ 6). Hartford reinstated Tripp's short-term disability benefits through April 10, 2000. (Def.'s SMF at ¶ 20).

On April 10, 2000, Tripp completed an application for long-term disability income benefits. (*Id.* at ¶ 21). Tripp came under the care of Peter Siao, M.D. at the Neuromuscular Department at Massachusetts General Hospital on April 26, 2000. (Pl.'s SMF at ¶ 7). Between April 2000 and November 2000, Tripp underwent extensive diagnostic tests and treatment. (*Id.* at ¶¶ 7, 10–15). On July 27, 2000, Todd Lyon, M.D., then acting Medical Director at Hartford, concluded Tripp was unable to perform heavy work. (*Id.* at ¶ 12). This opinion was recorded in a first addendum to Dr. Burr's medical report. (*Id.*).

On November 1, 2000, Dr. Lyon prepared a second addendum to Dr. Burr's medical report. (*Id.* at ¶ 15). This time, Dr. Lyon concluded that, in view of the negative muscle biopsy, there was no evidence to explain Tripp's lower extremity symptoms. (*Id.*). Dr. Lyon disagreed with the medical conclusions drawn by Tripp's treating physician, Dr. Siao, and retracted his opinion in the first addendum to the medical report. (*Id.*). Hartford discontinued Tripp's benefits as of October 31, 2000 and Tripp appealed this decision on December 24, 2000. (*Id.* at ¶¶ 16, 17).

On January 10, 2001, Dr. Siao opined that Tripp's exertional myalgia and painful muscle cramps were secondary to a primary muscle disease. (*Id.* at ¶ 18). Following Dr. Siao's diagnosis, Dr. Lyon issued a third addendum, this time agreeing with Dr. Siao's medical conclusion that Tripp had a primary metabolic myopathy.

(*Id.* at ¶ 19). Dr. Lyon recommended Tripp undergo a Functional Capacity Evaluation (FCE). (*Id.*). The March 26, 2001 FCE Report indicated Tripp's workday tolerance was two hours per day in a sedentary capacity and explained: "Pt. is deconditioned and will need to be reconditioned to work up to an 8 [hour] day." (*Id.* at ¶ 20). Tripp's ability to sit, stand, walk, push, pull, carry, kneel, crawl, crouch, bend, squat, lift overhead, lift at waist-level, lift at floor-level, climb stairs, firmly grasp, climb, balance, stoop, and reach measured in the "occasional" range. (*Id.*). His capacity for repetitive foot movement, fine manipulation, and simple grasp measured in the "frequent" range. (*Id.*). On April 7, 2001, based on the result of the FCE, Hartford approved Tripp's claim for benefits. (*Id.* at ¶ 22).

On November 2, 2001, Hartford's vocational rehabilitation coordinator, Marvin Bryant, performed an "employability analysis." (*Id.* at ¶¶ 25, 29). Bryant contacted Dr. Siao regarding Tripp's ability to perform "in the light duty work category that includes sitting, standing, and walking for an 8 hour work day." (*Id.* at ¶ 28). Dr. Siao replied Tripp would be unable to perform this level of work activity and recommended "sedentary work" instead of "light work." (*Id.*). Using the results of the Ability Profile, Bryant generated a list of occupational matches, which included a list of occupational titles [8] for which Tripp's transferability levels were noted as "fair." (*Id.* at ¶ 31). Bryant anticipated the majority of work activities to include sitting between four and six hours a day and standing and walking up to three hours a day. (*Id.* at ¶ 28). Purporting to rely on

**8.** Bryant found six DOT occupation matches. (Pl.'s SMF at ¶ 31). He concluded there were eight occupations matching the required physical functioning category outlined in the Formal Transferable Skills Analysis:

(1) Dispatcher; (2) Maintenance Service; (3) Automobile Locator; (4) Taxicab Starter–Dispatcher; (5) Sliding–Joint Maker; (6) Semiconductor; (7) Thermometer Maker; and (8) Assembler. (*Id.* at ¶ 32).

Dr. Saio's medical restrictions and the FCE, Bryant concluded Tripp was occasionally able to lift ten pounds, kneel, crawl, crouch, bend, squat, climb, stoop, and reach; and frequently able to perform repetitive foot movement, fine manipulation, and simple grasping. (*Id.* at ¶ 29). Bryant acknowledged Tripp's state of deconditioning, his limitation for sedentary work, and the uncertainty of his capacity to work an eight-hour work schedule. (*Id.*). On November 5, 2001, Hartford determined Tripp did not meet the definition of total disability in any occupation and discontinued his long-term benefits. (*Id.* at ¶¶ 39, 40). On January 9, 2002, Tripp appealed Hartford's denial of benefits. (*Id.* at ¶ 42).

On May 1, 2002, Dr. Siao completed a Physical Capacities Evaluation form requested by Hartford. (*Id.* at ¶ 46). Dr. Siao's report stated Tripp could sit for up to eight hours, but only for one to two hours at a time; stand or walk for one hour, but only for twenty minutes at a time; and drive for two hours, but only for an hour at a time. (*Id.;* Def.'s SMF at ¶ 55). Dr. Siao concluded Tripp was unable to lift/carry or push/pull any measurable weight. (Pl.'s SMF at ¶ 46). Dr. Siao opined that Tripp had reached maximum medical improvement and these restrictions were permanent. (*Id.*). Dr. Siao noted Tripp was "unable to return to his previous occupation. He needs to be retrained for sedentary type of work. [Patient] is able to type." (Def.'s SMF at ¶ 55).

Hartford referred Tripp's pending appeal to Edward Phillips, M.D., of the University Disability Consortium, asking for clarification of Tripp's limitations and restrictions. (Pl.'s SMF at ¶¶ 52, 53). Dr. Phillips and Dr. Siao conferred via telephone on September 27, 2002. (*Id.* at ¶ 53). Dr. Siao confirmed to Dr. Phillips that Tripp was being treated for symptoms of exertional myalgia. (*Id.*). In a letter to Dr. Siao memorializing their telephone conversation, Dr. Phillips wrote that he had reviewed Tripp's Physical Capabilities Evaluation form and found it consistent with the patient's status. (*Id.*). Dr. Phillips also reviewed the November 2, 2001 employability analysis and determined the occupation of "automobile locator" and "dispatcher" were "most appropriate" for Tripp, because each position required the least amount of "repetitive movement of the upper extremities." (*Id.* at ¶ 57). On October 29, 2002, based on the medical information and Tripp's participation in a vocational computer training program, Hartford determined Tripp had "the physical capacity for full-time sedentary work activity." (*Id.* at 59).

On November 8, 2001, Hartford denied Tripp's appeal, citing the medical evidence and the employability analysis as a basis for its conclusion that Tripp could work in a sedentary capacity, and therefore failed to meet the definition of "total disability" in any occupation.[9] (Def.'s SMF at ¶ 64).

### III. Legal Standard

Tripp has brought suit against Hartford in this Court for unlawful termination of his benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B).[10] *See Glista v. UNUM Life Ins. Co. of Am.,* 378 F.3d 113 (1st

---

**9.** The parties have properly focused on the question of whether Tripp could perform full-time work. There is a provision in the disability benefits contract for payment of partial disability benefits. (*Id.* at ¶¶ 69, 70). However, Hartford completely terminated Tripp's benefits—a decision that requires Tripp be able to perform full-time work.

**10.** Tripp also cites 29 U.S.C. § 1132(g), the attorney fees provision.

Cir.2004). Tripp and Hartford have each moved for summary judgment.[11]

■ The Plan grants Hartford, as Plan Administrator, discretion to determine eligibility for benefits and to interpret Plan provisions.[12] *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Because the Plan reserves discretion to the administrator, Hartford's denial of benefits must be upheld unless it is arbitrary and capricious. *See Liston v. UNUM Corp. Officer Severance Plan*, 330 F.3d 19, 22 (1st Cir.2003); *Leahy v. Raytheon Co.*, 315 F.3d 11, 15 (1st Cir.2002). Where, as here, judicial review is under the arbitrariness standard, the ordinary question is whether the administrator's action on the record before it was unreasonable. *Liston*, 330 F.3d at 24; *Cook v. Liberty Life Assurance Co. of Boston*, 320 F.3d 11, 19 (1st Cir.2003); *Pari–Fasano v. ITT Hartford Life & Accident Ins. Co.*, 230 F.3d 415, 418–19 (1st Cir.2000).

■ Moreover, because this Court must make its decision based solely on the record at the administrative level, summary judgment is "merely a mechanism for tendering the issue and no special inferences are to be drawn in favor of a plaintiff resisting in summary judgment; on the contrary, the rationality standard tends to resolve doubts in favor of the administrator." *Liston*, 330 F.3d at 24. Unlike the summary judgment standard,

which requires the fact finder to view the record in a light most favorable to the nonmoving party, the arbitrary and capricious standard "asks only whether a factfinder's decision is *plausible* in light of the record as a whole." *Leahy*, 315 F.3d at 17 (emphasis added).

■ The parties agree that Hartford's decision to withdraw compensation may be upheld if it was within the authority vested under the Plan and "supported by substantial evidence in the record."[13] *See Associated Fisheries of Maine, Inc. v. Daley*, 127 F.3d 104, 109 (1st Cir.1997). Sufficiency of the evidence, however, does not "disappear merely by reason of contradictory evidence." *Sullivan v. Raytheon Co.*, 262 F.3d 41, 52 n. 8 (1st Cir.2001); *Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 184 (1st Cir.1998); *Sprague v. Dir., O.W.C.P.*, 688 F.2d 862, 865–66 (1st Cir.1982); *see also Gannon v. Metro. Life Ins. Co.*, 360 F.3d 211, 213 (1st Cir.2004)("[T]he existence of contrary evidence does not, in itself, make the administrator's decision arbitrary."). In *Sprague*, the First Circuit defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sprague*, 688 F.2d at 865; *Bath Iron Works Corp. v. Preston*, 380 F.3d 597, 605 n. 2 (1st Cir.2004); *see also Gannon*, 360 F.3d at 213 ("Evidence is substantial if it is reasonably sufficient to support a conclusion ...."). It is the responsibility of the plan adminis-

11. The "fortuity that the parties chose to use cross-motions for summary judgment as the procedural vehicle to bring the case forward for judicial review of the plan administrator's determination cannot be permitted either to dilute the teachings of [*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)] or to undercut the standard of review that the *Firestone* Court decreed for use in ERISA benefit denial cases." *Leahy v. Raytheon Co.*, 315 F.3d 11, 18 (1st Cir.2002).

12. The Policy states, "The Hartford has full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." (Def.'s SMF at ¶ 4).

13. Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 2 (Docket # 17); Def.'s Mot. for Summ. J. at 4 (Docket # 13).

trator to weigh conflicting evidence. *Vlass v. Raytheon Employees Disability Trust*, 244 F.3d 27, 32 (1st Cir.2001). The issue is "not which side we believe is right, but whether [the insurer] had substantial evidentiary grounds for a reasonable decision in its favor." *Brigham v. Sun Life of Canada*, 317 F.3d 72, 85 (1st Cir.2003)(quoting *Doyle*, 144 F.3d at 184).

## IV. Discussion

Tripp posits three bases for his contention that Hartford unlawfully terminated his benefits: (1) Hartford's denial was based on work he *could become* qualified by training, education, or experience to perform, not work he *was then* qualified to perform; (2) Hartford's interpretation of the medical evidence is unreasonable, arbitrary and capricious; and (3) Hartford's vocational employability analysis is unreliable.

### A. "Could Become" Qualified

■ The Policy defines "total disability" in relevant part: "you must be so prevented from performing the essential duties of any occupation for which you *are* qualified by education, training or experience." (Pl.'s SMF at ¶ 66)(emphasis added). In its letter dated November 8, 2001, denying Tripp long-term disability benefits, Hartford wrote: "On 4/7/01, we notified you that effective 4/11/01 that in order to remain eligible for LTD benefits you must be unable to perform any occupation or work for which you *could become*\qualified for by training, education, or experience." (Def.'s SMF at ¶ 47)(emphasis added). Tripp contends there is a significant difference between what he was qualified to do in November 2001 and what he could have been qualified to do at some later date. He supports the significance of this dis-

tinction by pointing out that the Policy itself permits the continuation of benefits during a period of approved "Rehabilitative Employment," ranging from vocational training to job modifications. (Pl.'s SMF at ¶ 67).

Upon examination, however, Tripp's argument is without merit. To make the argument, Tripp has quoted one sentence in the November 8, 2001 denial letter out of context. The pertinent part of the November 8, 2001 letter reads:

On 4/7/01, we notified you that effective 4/11/01 that in order to remain eligible for LTD benefits you must be unable to perform any occupation or work for which you could become qualified for by training, education, or experience. We reviewed the FCE results to determine if you would meet the definition of "totally disabled" for any occupation. As stated above, it was determined that you *are* capable of working at the sedentary to light duty work classification. A statement was sent to Dr. Siao on 7/23/01 for clarification of your *current* abilities. The statement signed and dated by Dr. Siao, 9/21/01, indicated that in his opinion you *were* capable of working in the sedentary work classification.

Based on the restrictions, your education, and prior work history, we conducted an Employability Analysis. The results of the Analysis indicated that you *possess* the transferable skills required to perform six (6) different occupations. These occupations include Thermometer Maker, Dispatcher, Automobile Locator, Assembler, Sliding Joint [M]aker, and Taxicab Starter–Dispatcher. Therefore, it is our determination that you *do* not meet the definition of "totally disabled" which became applicable to you on 4/11/01.

(Def.'s SMF at ¶ 47)(emphasis added). The first sentence's reference to "could become" is Hartford's reminder to Tripp that in its April 7, 2001 letter[14] it had warned him if after April 11, 2001 he became qualified to perform any occupation, he could lose his disability benefits.

The remainder of the letter confirms Hartford's November 8, 2001 decision to terminate Tripp's benefits was based on work Hartford concluded Tripp could then perform. Hartford based its November 8, 2001 denial on the March 26, 2001 FCE evaluation; the September 20, 2001 statement by Dr. Siao; and the November 2, 2001 employability analysis by Bryant, which compared Tripp's physical capacity (as confirmed by the FCE and Dr. Siao) with the physical requirements of the positions set forth in the Dictionary of Occupational Titles. The use of the present tense in the remainder of the November 8, 2001 denial letter establishes that Hartford did not terminate Tripp's benefits based on jobs it concluded he could at some future time become able to perform, but on jobs it concluded he was then able to perform.

## B. Hartford's Interpretation of the Medical Evidence

■ Tripp's next argument is that Hartford's denial of benefits is based "on misstatements of the evidence, assumptions not supported by the evidence, and summaries and conclusions relying on misstatements of the evidence and assumptions." (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 5 (Docket # 17)). Tripp emphasizes, as he must, "This case does not present a battle of conflicting medical opinions." (*Id.*). Within its limited scope of review, this Court cannot dissect the medical opinions. The question is not whether this Court agrees with Hartford's interpretation of the voluminous medical reports, but whether there is "substantial evidence" to support its conclusion.[15]

■ To this end, this Court will review the evidence Hartford asserts supports its conclusion to determine whether it comports with the "substantial evidence" requirement. Hartford points to a number of medical reports and even to statements made by Tripp himself to confirm he was

14. Hartford's Statement of Material Fact makes reference to the April 7, 2001 letter. (Def.'s SMF at ¶ 42). The April 7, 2001 letter informed Tripp that Hartford had approved his application for long-term disability benefits. The letter also notified him that he would no longer be entitled to those benefits in the future if he later became able to perform the "essential duties of any occupation." The letter itself states: "As of April 11, 2001, Totally Disabled means you must be so prevented from performing the essential duties of any occupation for which you are qualified by education, training or experience."

15. For example, Tripp attacks Hartford's interpretation of the FCE. The FCE addressed the question of work capacity by stating Tripp had a "workday tolerance" of only two hours. The report explained: "Pt. is deconditioned and will need to be reconditioned to work up to an 8 [hour] day." The cover sheet of the report from Laura A. Robinson, PT, stated: Richard can lift a maximum of 17 pounds and

the work level is sedentary to light. The results were valid." (*Id.* at ¶ 39). In its November 8, 2002 denial of disability benefits, Hartford cited only the language in the cover sheet, not the two hour limitation. (*Id.* at ¶ 47). Tripp strenuously objects to Hartford's citation of only a portion of the FCE, charging Hartford with selective use of the report:

> Defendant repeatedly misrepresents the result of the March 26, 2001 Functional Capacity Evaluation[,] . . . adopts only the portions of the results which support its desired conclusions[, and] . . . fails to note that the FCE reported Plaintiff[']s workday tolerance at only 2 hours per day . . . . Defendant's reliance on only portions of the results is unreasonable.

(Pl.'s Opp. to Def.'s' Mot. for Summ. J. at 6–7). But, as Plan Administrator, it is Hartford's duty to comb through the record and weigh conflicting evidence—a duty that requires Hartford to be selective.

able to perform the essential duties of an occupation. Dr. Siao stated on September 10, 2001 that "it would be best for [Tripp] to start with sedentary work instead of light work." (Def.'s SMF at ¶ 44). On October 30, 2001, Dr. Siao reiterated: "It is my opinion that he should look for a sedentary type of job that does not include strenuous physical activity." (Id. at ¶ 45). Finally, on May 1, 2002, Dr. Siao confirmed that Tripp could sit one to two hours at a time up to eight hours a day and noted he could return to work in a lighter duty capacity immediately. (Id. at ¶ 55).

Hartford also points out that on May 13, 2002, Tripp himself signed an affidavit stating he attends a computer repair course "on a full-time basis, Monday through Friday, from 8:00 a.m. to 5 p.m." (Id. at ¶ 59). The course lasted for six weeks and was "designed to be very hands on so that practical knowledge and experience can be gained." (Id. at ¶ 60). Later, on June 14, 2002, Tripp's counsel confirmed Tripp had completed this computer course. (Id. at ¶ 58).

Finally, Hartford argues the November 2, 2001 employability analysis in which Bryant compared the physical requirements of DOT classifications with the results of the March 26, 2001 FCE and Dr. Siao's September 20, 2001 opinions is reliable evidence Tripp was no longer prevented from the essential duties of an occupation to which he was qualified by education, training or experience.

Based on the evidence in this record and mindful of its limited role in reviewing Hartford's decision in this case, this Court concludes Hartford's denial of ongoing benefits was supported by substantial evidence and must be sustained. *See Jestings v. New England Tel. & Tel. Co.,* 757 F.2d 8, 9 (1st Cir.1985)(it is for the trustee of a plan, and not courts, to choose be-

tween reasonable alternatives); *Johnson v. UNUM Life Ins. Co. of America,* 329 F.Supp.2d 161, 169 (D.Me.2004); *Guarino v. Metro. Life Ins. Co.,* 915 F.Supp. 435, 445 (D.Mass.1995).

### C. The Vocational Employability Analysis

Last, Tripp contends the November 2, 2001 employability analysis performed by Bryant was unreliable. In his November 2, 2001 analysis, Bryant recommended Dr. Siao be consulted to determine whether Tripp could work an eight hour day in light of his deconditioned physical state. (Pl.'s SMF at ¶ 32). Tripp contends because the employability analysis was conditional, Hartford should not have relied on it to draw a final conclusion. However, as noted, there is evidence in the record that on May 1, 2002, Dr. Siao expressly confirmed Tripp could sit up to eight hours a day, for one to two hours at a time, and Tripp himself established an eight hour a day work capacity by completing in the spring of 2002 a full-time computer repair course. Thus, to the extent the November 2, 2001 employability report was conditioned upon confirmation of Tripp's capacity to work full-time, this condition was later met by medical opinions expressed by Tripp's treating physician and by Tripp's own admitted actions.

### D. Defendant Hartford's Motion for Summary Judgment

Having concluded that Tripp's objections to Hartford's denial of disability benefits are insufficient to meet his burden, this Court concludes for the same reasons that Hartford's decision was neither arbitrary nor capricious and was based on substantial evidence in the record. The combination of medical evidence, vocational evidence, and Tripp's own admitted activity level constitutes ample grounds to sustain

Hartford's denial under the "deferential arbitrary and capricious standard" applicable to this case. *See Pari–Fasano,* 230 F.3d at 418.

## V. Conclusion

The Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's Motion for Summary Judgment and ORDERS the Clerk to enter judgment in favor of the Defendant.